[Crim. No. 3901.   First Dist., Div. One.   Dec. 26, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. GEORGE WILLIAM HICKOK, Defendant and Appellant.

Paul C. Maier, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, John S. McInerny and John L. Burton, Deputy Attorneys General, for Plaintiff and Respondent.

TOBRINER, J.—Appellant's triple attack upon his conviction for burglary fails to establish a basis for reversal. Despite his contrary contentions, the evidence fully substantiates the judgment; the court did not improperly instruct the jury as to the identity of the stolen property, and the court properly refused a proffered instruction as to an alibi.

On August 7, 1960, at about 2 o'clock in the morning, Robert Chapman, owner of a Union Oil Station at the southwest corner of an intersection in Sunnyvale heard the breaking of glass at the Shell Station located on the northwest corner of the same intersection. Shortly thereafter he phoned the police; a few minutes later Officer Link arrived by car. The officer saw someone run away from the general area, negotiate a fence and start back across a vacant lot. After ordering the person to halt, the officer shouted, " 'Here he goes' " or words to that effect to attract the attention of other officers who had also arrived in answer to the call and who were in the rear of the station area. He held a spotlight on the running individual and, so far as he was able, followed in his car. When he could no longer continue he circled some buildings. The headlights of his car illuminated the back of one of the buildings; he "noticed three persons" who had stopped at that point. They turned out to be two officers and appellant.

When the officer approached the men, all three of them were breathing heavily, and appellant was wringing wet with perspiration. The officers found an argyle sock in the area where appellant was apprehended. At headquarters, at the

time of booking, appellant emptied his pockets of a galaxy of coins, which appellant said that he had won in gambling. One of the quarters was discolored. Subsequently, the officers discovered that a window at the rear of the Shell Station had been broken.

Later that morning Mr. Weingartner, the owner of a Mobil Station at the same intersection, found that the station had been burglarized and that a considerable number of coins had been taken from the cash drawer. Some $3.90 was missing from a cigarette machine. Mr. Weingartner testified that he recognized the discolored quarter as one which he had seen on the previous evening prior to leaving for his home.

Leland G. Cook, a public safety officer of Sunnyvale, testified that he undertook a partial investigation of the Mobil Station immediately after appellant's arrest but did not discover a broken window. Near the broken window at the Shell Station the owner found two screwdrivers from the Mobil Station and the officers found another argyle sock.

Charged with burglary and attempted burglary, appellant, upon a trial by jury, suffered a verdict of guilt in the second degree on both counts. He admitted four prior convictions; he did not take the stand in his own defense. Appellant appeals from the convictions of burglary and attempted burglary but presents no grounds for reversal of the judgment on the attempted burglary. Nor have we found any basis for appeal of the latter conviction.

We examine the three issues raised by appellant as to the conviction for the burglary: the sufficiency of the evidence to support the conviction; the propriety of the instruction as to the identity of the stolen property and the validity of the refusal to give an alibi instruction.

The verdict finds ample substantiation in the evidence. Appellant's preliminary point that the record does not support a finding of a "breaking" of the burglarized station misconceives the requisites of burglary: ▆▆ *People* v. *Tims* (1959) 171 Cal.App.2d 671 [341 P.2d 56] states: "At common law and in some jurisdictions a breaking is still one of the essential ingredients of the crime of burglary, but this rule does not prevail in California. In this state entry with the requisite intent is sufficient." (P. 673.) Penal Code section 459 (erroneously cited by appellant as § 449) clearly specifies that such intent suffices.

Since appellant actually possessed a roughly equivalent number and amount of coins to those stolen, his emphasis

upon the failure of an exact identification does not defeat the verdict. For one thing the owner of the station testified that a quarter found in appellant's possession "resembled" that which he had inspected the previous night. Its discoloration distinguished it, and this characteristic substantiated its identification. For another, a comparison of the coins stolen and those possessed by appellant produces a dramatic similarity. Appellant had 13 half dollars; 12 were stolen; he had 11 dimes and 13 were stolen. While appellant possessed 12 more than the 33 quarters stolen and 12 more than the 24 nickels, the coins taken from the rifled cigarette machine, which contained quarters and nickels in the amount of $3.90, almost precisely accounts for the difference. Appellant's claim that these facts render a mere "superficial similarity" dissolves in the acid of the record. To contend that this evidence does not serve as a substantial basis for the finding and "should not have gone to the jury" is to argue that the stolen and the recovered coins must match with mathematical accuracy. (See *People* v. *Harsch* (1941) 44 Cal.App.2d 572 [112 P.2d 654].)

Appellant's claim "that the 'possession' evidence cannot be used to 'bootstrap' the evidence necessary to show that a burglary was committed" collapses upon analysis of the other evidence. The police found appellant running away from the Shell Station located in the same intersection, which he had attempted to burglarize; the owner of the Shell Station found two screwdrivers taken from the Mobil Station; the police found one argyle sock where appellant was arrested and another, although not shown to have been the mate of the first, at the Shell Station. Such evidence might well have demonstrated a common scheme to burglarize both stations.

In any event, as stated in *People* v. *Alexander* (1947) 78 Cal.App.2d 954 [178 P.2d 813] : "While such possession [of stolen property] would not, standing alone, suffice to determine the possessor's guilt, yet as evidence, its quality is of such high degree that only slight corroborative proof of other inculpatory circumstances would warrant a conviction." (Pp. 956-957.)

Finally appellant's reliance upon *People* v. *Robison* (1961) 193 Cal.App.2d 410 [14 Cal.Rptr. 181] avails him nothing because that case turned upon the determination of which of two persons present at the time of the offense had committed it; we face the identification of only one known culprit here.

Ample evidence in our case substantiates a verdict of his guilt.

Appellant's second point as to the impropriety of the instruction upon the identity of the stolen property encounters the insurmountable obstacle that appellant himself proposed the instruction. According to appellant, the instruction did not "clearly advise the jury of its duty to determine whether or not the purportedly stolen property . . . [was] in fact the property which was stolen." Not only does the fact that appellant submitted the instruction answer appellant's present and belated objection to it, but also the precept that a court of its own motion will instruct only on general legal principles but not upon " 'specific points developed through the evidence introduced at the trial, unless such instructions are requested by the party desiring them.' " (*People* v. *Warren* (1940) 16 Cal.2d 103, 117 [104 P.2d 1024].)

Ingeniously developing a passage in the record to the effect that an officer's nocturnal and partial inspection of the Mobil Gas Station did not disclose a broken window, appellant's counsel posits his third point upon this failure. His hypothesis is that the burglary must therefore have occurred *after* appellant had been taken into custody. Hence, says counsel, the custody serves as an alibi, and an alibi instruction should have been given.

Assuming for the purposes of this discussion, that the court committed error in not giving the submitted alibi instruction, we have concluded that the error could not have inflicted prejudice upon appellant. While the issue of whether or not an error has worked prejudice upon a defendant must necessarily turn upon the peculiar facts of each special case, there are a number of decisions which hold that failure to instruct upon an asserted alibi does not necessarily cause prejudice. Thus the Supreme Court's statement upon an application for hearing in *People* v. *Visconti* (1916) 31 Cal.App. 169, 172 [160 P. 410, 411], affords an early expression that the refusal of such an instruction is ground for reversal only if prejudicial. The court states that it assumes that the District Court of Appeal "concluded, in view of the circumstances of this particular case as shown by the record, that the refusal of the trial court to permit the requested instruction operated substantially to the prejudice of the defendant." (P. 172.)

In *People* v. *Gourdin* (1930) 108 Cal.App. 333 [291 P. 701], the court, pointing out that the alibi instruction should have been given, nevertheless held that it "was not supported by evidence showing the presence of appellant at another place than that where the crime was committed at the time in

question'' and that the contrary evidence ''is so definite and clear that there does not appear to have been any miscarriage of justice in the verdict rendered. (P. 335.)

Finally, *People* v. *McCoy* (1932) 127 Cal.App. 195 [15 P.2d 543] represents another case in which the court held the refusal to grant an alibi instruction did not require reversal. The proposed instruction ''appears to be no more than a slight amplification'' of the instruction on reasonable doubt, but even postulating that the instruction should have been given, the facts of defendant's guilt are so positive that ''error, if any, in refusing said instruction has not resulted in a miscarriage of justice.'' (P. 199.)

These cases merely reflect the general rule that an erroneous instruction is not necessarily prejudicial. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Although appellant suggests that *People* v. *Kane* (1946) 27 Cal.2d 693 [166 P.2d 285] and *People* v. *Wilson* (1929) 100 Cal.App. 428, 430 [280 P. 137] ''can be construed to hold'' that failure to instruct upon alibi ''per se requires reversal,'' we do not believe that the cases reach to that extent. Indeed, in *Kane,* Justice Schauer carefully points out that four cases which he cites, including *Gourdin* and *McCoy, supra,* hold ''[t]hat such an instruction should be given but its refusal was not prejudicial under the particular circumstances shown in those cases. . . .'' (P. 700.) He concludes that ''on the record here we cannot justifiably hold that such error was not prejudicial. . . .'' (P. 702.) Nothing in the opinion suggests that the refusal of the instruction is per se prejudicial. Neither does *Wilson* contain any such flat statement; the court there too concludes that ''defendant . . . has been prejudiced in his substantial rights. . . .'' (P. 432.) We find neither cases nor reasoning which sustains the proposition that an omission of an alibi instruction escapes the general requirement that a defendant must show prejudice to obtain a reversal. (*People* v. *Lopez* (1948) 32 Cal.2d 673, 675 [197 P.2d 757]; *People* v. *Sanchez* (1947) 30 Cal.2d 560, 569 [184 P.2d 673]; *People* v. *Nickell* (1937) 22 Cal.App.2d 117, 123, 125 [70 P.2d 659].)

We shall explain why we believe that neither the nature of the omitted instruction nor the state of the record justify a conclusion that the omission of the instruction did cause prejudice.

The alibi instruction could have had but little effect upon the jury's deliberations. The sought instruction does not rest upon any independent showing of alibi but upon another at-

tempted characterization of facts covered by the granted instructions. The testimony that the officer did not find a broken window actually went to the defense point that appellant did not commit the robbery because it occurred after he was there. The officer's nondiscovery composed one fact among others as to the perpetration of the crime itself; it related to the method, the time and the circumstances of its commission. The point as to the broken window, then, did not really involve the *place* where appellant happened to be, but the *time* when the crime occurred. The "alibi" instruction would merely have put another face upon facts as to which the jury had already been instructed. The further instruction, then, could not have seriously affected the jury's considerations.

The record, as we have seen, pointed strongly to appellant's guilt. The police apprehended appellant while he was "wringing wet" from flight from the Shell Station which he attempted to burglarize. There, at the Shell Station, with its broken glass, the owner found two screwdrivers which the owner of the Mobil Station, catty-corner from the Shell Station, positively identified as his own. From his pockets appellant disgorged a bevy of small coins which roughly corresponded to the amount taken from the Mobil Station. One of those coins, a discolored quarter, was identified by the owner of the Mobil Station as having been in his till the night before. Such facts as these disclose no close balance of the evidence; they are compelling indicia of guilt.

Appellant argues that the statement of the safety officer that he did not discover a broken window at the Mobil Station immediately after the attempted robbery should have been "pinpointed" by the sought instruction. Such an instruction, he says, might have produced a different result. Yet the officer's investigation was "partial." He made it in the dark hours of the early morning. No testimony forecloses the possibility that the robbery might not have been committed without the breakage of the window, or if, when the officer was there, the window were broken, that he failed to see it. Appellant's argument as to prejudice is a weak weapon as contrasted with the armature of the record; we cannot conceive of the jury changing its verdict because an "alibi" instruction urged a differing desideratum of these formidable facts.

We affirm the judgment.

Bray, P. J., and Sullivan, J., concurred.