LILLIE, J.
 

 Defendant and one Leathers were found guilty of burglary, second degree (§ 459, Pen. Code); probation was denied and defendant was sentenced to the state prison. He appeals from the judgment.
 

 On June 10, 1966, in the absence of Arthur Williams, his apartment at 4729 West San Vicente was entered and various items were removed. The draperies which had been left open were drawn, pillows were scattered over the floor, a screen had been removed from the kitchen window, the bedroom had been ransacked and the closet door left open. Missing were Wil-
 
 *544
 
 Iiams’ stereo, clothing, clock radio, four pairs of gloves, cologne, a tube of toothpaste, a book of checks and record albums. Williams denied giving anyone permission to enter his apartment or to take anything therefrom.
 

 Around 1 p.m. on June 10, 1966, Sergeant Modarelli was driving a police unit toward San Vicente when he observed defendant and Leathers carrying a stereo from an apartment house at 4729 San Vicente; they were “carrying or struggling with this stereo” on the sidewalk; piled on top of the stereo were various articles of men’s clothing, a radio, pair of boots, records and some cologne; as he approached they quickly set down the stereo and defendant tripped or stumbled and fell out into the street; he stopped and questioned defendant and Leathers as to where they were taking the stereo; he was told that it was being taken to St. Elmo Drive, and Leathers told him that it belonged to defendant; he asked defendant what kind of stereo it was and he replied he did not know; Leathers said it was a Magnovox; he looked at it and found it was a Sears Silvertone; defendant said he lived there (4729 San Vicente) or used to live there. Sergeant Modarelli further testified that during this time neither defendant nor Leathers was under arrest, only “under investigation”; then he called for assistance and another police unit arrived and took defendant to the apartment house where there was a discussion with the manager; shortly thereafter the officer and defendant returned to the police unit; they then placed defendant and Leathers under arrest and advised them of their constitutional rights.
 

 Defendant testified that he went to Williams’ apartment entering through the back window, and removed the stereo and other items; he did this because he had information that Williams was going to be burglarized and since he was a friend of his he went over to warn Williams; Williams was not home so he decided to protect him by taking the property to his own house; he did not advise anyone of his fear that Williams’ apartment would be burglarized and did not leave a note for Williams telling him that he had taken the items.
 

 Appellant argues that under
 
 Miranda
 
 v.
 
 Arizona,
 
 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974];
 
 People
 
 v.
 
 Dorado,
 
 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]; and
 
 People
 
 v.
 
 Stewart,
 
 62 Cal.2d 571 [43 Cal.Rptr. 201, 400 P.2d 97], his statements were inadmissible because “it is obvious that at the time Officer Modarelli questioned [Mm] he was in custody.”
 

 
 *545
 
 The conversation between Officer Modarelli and defendant constituted neither a “custodial” interrogation
 
 (Miranda
 
 v.
 
 Arizona,
 
 384 U.S. 436, 444 [16 L.Ed.2d 694, 706, 86 S.Ct. 1602, 10 A.L.R.2d 974]) nor “a process of interrogations that lends itself to eliciting incriminating statements”
 
 (People
 
 v.
 
 Dorado,
 
 62 Cal.2d 338, 354 [42 Cal.Rptr. 169, 398 P.2d 361]); and it is apparent from the evidence that the investigation was a general inquiry that involved neither an “unsolved crime” nor a “particular suspect.”
 
 (People
 
 v.
 
 Dorado,
 
 62 Cal.2d 338, 353 [42 Cal.Rptr. 169, 398 P.2d 361].) Sergeant Modarelli testified that when defendant walked to him neither defendant nor Leathers was under arrest but was “under investigation at that particular time”; and other evidence supports this testimony. Defendant was not placed under arrest until after the statements were made and after defendant, who claimed he lived at 4729 San Vicente, or used to live there, went with another officer to talk to the apartment manager. The record fails to establish that defendant was in custody or restrained or that his freedom was in any manner restricted at the time he made the statements he now claims were inadmissible; it was only after Sergeant Modarelli talked to defendant that he called for assistance and defendant accompanied another officer to the apartment manager. More significant, however, is the clear showing that Sergeant Modarelli’s investigation was simply one of suspicious circumstances, not one which had begun to focus on a particular suspect, for at that time the sergeant was not aware that a crime had been committed. Por the same reason, in questioning defendant, Sergeant Modarelli was not carrying on a process of interrogation that lent itself to eliciting incriminating statements.
 

 When the sergeant questioned defendant concerning the stereo, he had no knowledge that any crime relative to the stereo had in fact been committed by defendant or anyone else; he was unaware that Williams’ apartment had been burglarized. He was simply presenting an opportunity for defendant and Leathers to explain what they were doing with the stereo. Our Supreme Court in
 
 People
 
 v.
 
 Dorado,
 
 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], recognized the propriety of just such conduct without the necessity of warning: “Nothing we have said, of course, should be interpreted to restrict law enforcement officers during the investigatory stage from securing information from one who is later accused of the crime or from obtaining answers to their questions. . .
 

 
 *546
 
 ‘ ‘ Only when the investigatory stage has become an accusatory one, that is, when it has begun to focus on a particular suspect, the suspect has been taken into police custody, and the police have carried out a process of interrogations that lends itself to eliciting incriminating statements, does . . . the confession given without the required warning or other clear evidence of waiver become inadmissible evidence.” (P. 354.) So, too, the United States Supreme Court in
 
 Miranda
 
 v.
 
 Arizona,
 
 384 U.S. 436 [17 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] said at pages 477-478: “Our decision is not intended to hamper the traditional function of police officers in investigating crime. [Citation.] When an individual is in custody on probable cause, the police may, of course, seek out evidence in the field to be used at trial against him. Such investigation may include inquiry of persons not under restraint. General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. ’ ’
 

 The situation here is similar to that described in
 
 People
 
 v.
 
 Wilson,
 
 238 Cal.App.2d 447, 460 [48 Cal.Rptr. 55] : “The circumstances here reflect that at the time the preliminary questions were asked the officers did not know what crime, if any, had been committed. The questions were not designed to elicit incriminating statements, but to afford the defendant an opportunity to explain his presence and actions. Therefore, even if the probative facts elicited be deemed extrajudicial statements, as distinguished from nonassertive conduct, they are admissible as admissions obtained before the authorities had commenced a process of interrogation that lent itself to eliciting incriminating statements.”
 
 (People
 
 v.
 
 Cotter,
 
 63 Cal.2d 386, 393 [46 Cal.Rptr. 622, 405 P.2d 862] ;
 
 People
 
 v.
 
 Hawkins,
 
 249 Cal.App.2d 379, 383 [57 Cal.Rptr. 522].)
 

 The judgment is affirmed.
 

 Wood, P. J., and Fourt, J., concurred.