[Crim. No. 14464.    Second Dist., Div. One.    June 5, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. WALTER LEE MIDKIFF, Defendant and Appellant.

Mitchell J. Grossman, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Frederick R. Millar, Jr., Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—A jury found defendant guilty of second degree burglary (§ 459, Pen. Code) and grand theft (§ 487, subd. 1, Pen. Code); he admitted three prior convictions of burglary. Defendant appeals from the judgment.

O'Keefe Medical Service and Eureka X-Ray Tube Company occupy the same premises at 841 South Grandview. At 7:30 a.m. on April 14, 1967, Mr. McKee, an employee of Eureka had trouble opening the lock on the side door because it had been tampered with; later certain of his tools left in order on his work bench were missing. Looking around he found some of them scattered in the O'Keefe part of the building; thereafter Mr. Puls, service manager of O'Keefe, and another tenant saw a small hole, 18'' by 24'', in the roof of the front part of the showroom. A rope was hanging down to the floor from a rafter and there was debris over the showroom carpet and couches. Numerous items belonging to

O'Keefe were missing,[1] the total value of which was $830 or $840.

Around 6 a.m. on April 14, 1967, Mr. Basaraba, who lives across the alley approximately 30 feet from the South Grandview premises, came around the corner of the apartment building and noticed a metallic blue Mercury Monterey parked in the alley immediately beside the rear door of the O'Keefe warehouse building; all doors were open and the front seat of the car was torn. He saw two men around the car on the driver's side, one of whom he identified as defendant; he saw defendant enter the building through the door with a dolly. Mr. Basaraba went over to his own car and cleaned the rear window, all the while watching the car because he figured he would have trouble getting his own car out. He then got in, started up and backed his car out to the west waiting there awhile hoping they would move the car. By this time he became suspicious and wrote down the license number, FGY 238, which he later turned over to the police. Finally, he saw defendant come out of the warehouse with the dolly, get into the car and move it to one side; he noticed a cream-colored item about two feet long, a foot high and a foot across in the rear seat, also a dark object. After the car was moved Mr. Basaraba proceeded to work.

Officer Dauer had information concerning a 1959 Mercury, license number FGY 238. On April 25, 1967, he saw the car twice—around 2 p.m. and later at 3 p.m.—and stopped it; defendant was driving and alone. The car was no longer metallic blue but black; the paint was a rough finish as though it had been handpainted by an inexperienced painter and the blue showed through the black. Officer Dauer arrested defendant. Various items missing from the South Grandview premises were in the vehicle.

For the defense Mary Hall testified that on April 12, 1967, around 6:30 p.m., defendant came to her apartment accompanied by two men; he knew she had a blank cash receipt book and wanted to use it because he was selling his car to them and they were making a deposit; he wrote a receipt making two copies, the white one he gave to the two men and kept the pink carbon copy; a cash transfer of funds took place and within ten days to two weeks the balance was to be paid;

---

[1]Speed wrench with a blue handle, set of drills, incomplete set of taps, five rectifying X-ray valve tubes (new, with a fair market value of $100 apiece), small blow torch, screwdrivers, wrenches, wire cutters, striker cast cutter (fair market value $92), four Craftsman drills (fair market value $80), Singer vacuum cleaner, and miscellaneous items.

on the morning of April 25, 1957, the two men returned with the car and left it saying they would have the money for it in a day or two; defendant drove her to work that morning; the car had been freshly painted and was loaded with merchandise consisting of women's clothing; there were a few items in the front seat and the back was loaded.

On rebuttal Officer Willis testified that around 4 p.m. on April 25, 1967, at the police station he advised defendant of his constitutional rights; he asked defendant if he understood them and he said that he did; he asked defendant if the car belonged to him and defendant said the car was his; he asked him if he had ever loaned the car to anyone and defendant answered, ''No'' and that no one other than he had used the car since he had acquired it. Defendant was not asked whether he sold the car, and he did not volunteer any statement that he had sold it.

Without merit is appellant's contention that his statements to Officer Willis were not admissible in evidence because they were made *prior* to being advised of his right to counsel; and that while he was advised generally of his rights *after* he made the statements he was not told that he could have an attorney present during his interrogation. Officer Willis' testimony establishes that an hour after defendant's arrest, and at the police station, defendant was properly advised of his constitutional rights in accord with *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], and that immediately thereafter defendant told him that the car was his, he never loaned the car to anyone and no one other than he had used the car since he had acquired it.

The People did not offer defendant's statements on their case in chief; the statements were offered on rebuttal to refute the claim of defense witness, Mary Hall, that defendant sold his car thus, at the time of the burglary he did not have possession of the vehicle. However, before the statements were received in evidence extensive testimony was taken outside of the presence of the jury for the purpose of permitting the judge to determine whether defendant had been properly advised of his constitutional rights under *Miranda* (§ 405, Evid. Code). Thus Officer Willis testified that following defendant's arrest and at Rampart police station he, Officers Dauer, Farmer and Johnson and defendant were present; before defendant made any statements he advised defendant

of his constitutional rights;[2] defendant did not indicate that he did not understand the admonition, to the contrary, he "stated that he understood it"; then he asked defendant if the car belonged to him and defendant said that it was his car; he asked defendant if he had loaned the car to anyone and defendant stated no; asked, 'You have, no one else has ever used this car since you acquired it?'' defendant answered, "That's right"; then questions were asked defendant concerning the articles in the car at which time defendant indicated he didn't want to make any further statements and wanted to see his attorney. At the termination of this testimony defense counsel argued to the trial judge that there had not been a "proper waiver" by defendant of his constitutional rights, that the officer did not go far enough to determine whether defendant desired to "give up" his rights, and "I don't think they [People] have carried their burden." The court replied, "I am satisfied that they have." Then for the limited purpose of the hearing, defendant testified on *voir dire* outside of the presence of the jury that the arresting officers did not advise him of his constitutional rights; he told the arresting officers he did not want to say anything about the case until he had talked to his attorney; thirty or forty-five minutes later at the station he had a conversation with Officer Willis prior to being given his rights and "the whole conversation was before he told me about my rights"; after the conversation Officer Willis told him his rights but did not tell him "You don't have to say anything without somebody, an attorney"; and he advised Officer Willis that he didn't want to say anything until he had an attorney. The trial judge announced "I don't believe the defendant," and found defendant's statements to be admis-

---

[2] "I asked the defendant if he had ever been advised of his constitutional rights in the past. He said he had.

"I stated, 'You understand that you have the right to have an attorney represent you during all portions of the proceedings against you?' He said, yes, he did.

"I asked him if he understood that he had a right to consult with an attorney prior to our questioning, and that he had the right to have an attorney present during our questioning. He stated that he did.

"I advised him that if he was unable to afford a private attorney, the court would appoint the public defender to represent him.

"I advised him that he had the right to remain silent. He didn't have to tell me anything, but if he did say anything, it could be used against him at his trial.

"I asked him if he understood all that and he stated that he did.

"I asked him if he had any questions about those rights. He stated, 'No.'"

sible in evidence. Before the jury Officer Willis again testified concerning his admonitions to defendant and defendant's subsequent statements to him.[3]

Whether defendant was properly given his constitutional rights and knew and understood them and notwithstanding these advices voluntarily elected to talk to Officer Willis were issues decided by the judge after a hearing outside the presence of the jury. (*People* v. *Schader*, 62 Cal.2d 716, 728 [44 Cal.Rptr. 193, 401 P.2d 665]; *People* v. *Eli*, 66 Cal.2d 63, 76 [56 Cal.Rptr. 916, 424 P.2d 356].) Conflicts in the evidence relative to such issues are predominantly questions for the trial judge; his determination will not be disturbed on appeal unless it is "palpably erroneous." (*People* v. *Stafford*, 240 Cal.App.2d 422, 424 [49 Cal.Rptr. 598]; *People* v. *Salcido*, 246 Cal.App.2d 450, 456 [54 Cal.Rptr. 820].) The judge's determination on the issue is clearly supported by the evidence. The judge expressed his rejection of defendant's version of what occurred at the police station as not credible and accepted the testimony of Officer Willis as true; the officer's testimony is more than adequate to sustain the People's burden to establish that before defendant made any statement to Officer Willis he was properly informed of his rights and knowingly and intelligently waived them.

Appellant's final contention that there is insufficient evidence to support the judgment is without substance. Before a judgment may be set aside it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778].) Viewing the evidence in a light most favorable to the judgment and assuming the existence of every fact reasonably deducible from the evidence we find no grounds upon which to reverse the judgment.

---

[3] "I told the defendant that he had the right to have an attorney represent him during all portions of the proceedings against him. That he had a right to consult with an attorney prior to my questioning of him. That he had a right to have an attorney present while I questioned him, and that if he was unable to afford the service of a private attorney, the Court would appoint the public defender to represent him.

"In informed him that he had the right to remain silent. He did not have to tell me anything, but that anything he did say could be used against him at his trial.

"I asked him if he understood all those rights. He stated he did. I asked him if he had any question about them and he stated, 'No.' "

Appellant's extensive factual argument has no place on appeal for this court may not reweigh the evidence or reject the jury's finding on the credibility of witnesses. (*People* v. *Perez*, 58 Cal.2d 229, 237 [23 Cal.Rptr. 569, 373 P.2d 617, 3 A.L.R.3d 946]; *People* v. *Hillery*, 62 Cal.2d 692, 702 [44 Cal.Rptr. 30, 401 P.2d 382].) Contrary to appellant's position that the People's case rests solely on circumstantial evidence, there was an eyewitness to the burglary of the Grandview premises—Mr. Basaraba, who identified defendant as the man he saw with a dolly going in and out of the rear of the warehouse early in the morning to a vehicle parked in the rear bearing license number FGY 238; he watched defendant and his activities for some time because he was waiting to move his own vehicle. While on cross-examination he said that he was not "absolutely" certain of defendant's identity, he did testify, "I would say I am sure." This was sufficient to connect defendant to the crimes. Moreover, the identification of the defendant need not be positive (*People* v. *Yates*, 165 Cal.App.2d 489, 494 [332 P.2d 314]); the sufficiency of the evidence is a question for the trier of the facts and if any inference of uncertainty can be drawn from Mr. Basaraba's identification because of the conditions under which he observed defendant, it was strictly a matter of argument to the jury. (*People* v. *Sloan*, 223 Cal.App.2d 96, 98-99 [35 Cal.Rptr. 519].)

The testimony of defense witness Mary Hall that defendant sold his vehicle during the period in question which appellant claims is confirmed by the receipt of the sale entered in evidence, even if believed, does not preclude a finding that defendant had possession of the vehicle on the morning of April 14, 1967. Her testimony indicated but a "transfer of funds" between defendant and two unidentified persons and a statement of terms for payment of the balance of the purchase price. However, her testimony of "sale" was entirely inconsistent with defendant's own admission that the car belonged to him, he never loaned the car to anyone and no one other than he had used the car since he had acquired it. It is also inconsistent with Mr. Basaraba's identification of the car (by color, make and license number) as the one he saw defendant move in order to allow him to back his own car out of his premises on the morning of April 14, 1967. Any conflict or ambiguity in the evidence raised by the defense testimony was for the jury to resolve (*People* v. *Cook*, 233 Cal.App.2d 435, 439 [43 Cal.Rptr. 646].) and the jury resolved the same against defendant.

While mere possession of stolen property standing alone is not sufficient to connect a defendant with the commission of a burglary, it is nevertheless a circumstance strongly indicating guilt, and only slight corroborating evidence is required if the goods were recently stolen. (*People* v. *Beverly,* 200 Cal.App.2d 119, 123-124 [19 Cal.Rptr. 67]; *People* v. *Hickok,* 198 Cal.App.2d 442, 445 [17 Cal.Rptr. 875].)

Here the items stolen from the South Grandview premises were recovered only ten days after the theft by Officer Dauer from defendant's car which defendant was driving. Further corroborating circumstances, of course, are the presence of defendant's car on the morning of the burglary in the alley behind the warehouse and defendant's activities in connection therewith.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.