[Crim. No. 14291.   Second Dist., Div. One.   July 26, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES SHELLEY GANT et al., Defendants and Appellants.

Joseph Amato, under appointment by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Frederick R. Millar, Jr., Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—The trial court found Gant guilty of grand theft (§ 487, subd. 3, Pen. Code) and Gant and Reed guilty of second degree burglary (§ 459, Pen. Code) and carrying a concealed weapon (§ 12025, Pen. Code). Gant appeals from the judgment and order denying his motion for a new trial; Reed appeals from the judgment. Appeal from the order is dismissed.

On April 19, 1967, a 1965 Chevrolet, license MJV 152, belonging to Fred Astman was stolen from a parking lot; a week later the license plates, SIW 084, were stolen from a 1966 Chevrolet owned by Beatrice Ramsey and replaced with license plates MJV 152.

Around 6:30 p.m. on April 21, 1967, Vincent Helwig returned to his residence and found the back screen door cut and unlatched and the glass door broken. The house was in disarray and various articles were missing. Among the items taken were two pistols (a Mauser and a Colt .45), a stamp collection and coins in Helwig's collection, including half-dollars, a Barber dime and an 1886 and 1891 silver dollar. Both guns had been cleaned and were in good working order.

On April 23, 1967, about 9:30 a.m., State Highway Patrolman Kinsey was proceeding southbound on Highway 101 when he observed a green vehicle approximately 100 yards behind him; he drove off the freeway, turned around allowing the green vehicle to proceed and re-entered the freeway; about two miles down he saw the vehicle, clocked it at 90 miles per hour, then began to close the gap; as he did so it speeded up to approximately 100 miles an hour; he turned on the red light and the car pulled to the right-hand edge of the road; the vehicle was driven by Gant; Reed was seated beside Gant in the right front and two males were seated in the back; Officer Kinsey asked Gant for a driver's license which he produced, then for the vehicle registration but Gant told him the car had just been stolen from him and he had not gotten back the registration and he had just picked it up in the San Joaquin Valley and was returning it to Los Angeles. The officer walked back to his patrol vehicle and ran a registration check; a "No Wants" came back on the license plate numbers—SIW 084. He began to write a speeding citation at which point Gant motioned for him to come to his vehicle but the officer motioned for Gant to come to his; Gant walked back to the patrol car and a discussion followed during which Gant changed his story several times. The officer then asked Gant to stay with him at the patrol vehicle until the registration for the car came back over the air, and called for a back-up unit; as the back-up unit arrived so did the registration information that the license plates belonged to another vehicle registered to Bernice Ramsey. He then ran a vehicle identification number check which showed that the vehicle, registered to Jean or Fred Astman, had been stolen. The officer removed the other occupants from the vehicle; they were all advised of their constitutional rights, handcuffed and placed in the patrol vehicle. Defendants' car was searched; the search uncovered a Mauser pistol belonging to Helwig under the floor-mat of the front passenger seat, Helwig's Colt .45 under the dash to the right of the glove compartment, money, two

knives, a watch, a wedding band and a small pocket knife. In Reed's pocket were found Helwig's 1886 and 1891 silver dollars.

Appellants do not deny that Helwig's residence was burglarized and that the firearms and silver dollars were taken therefrom but contend that, with the exception of the guns found concealed in the car, the record is devoid of any evidentiary connection between them and the burglary. They argue that the fact that the guns were not in plain sight would indicate that they knew nothing about them and further, the two men in the back could have acted independently of them and been the perpetrators of the burglary without their knowledge.

■ While the evidence connecting defendants with the burglary is circumstantial, the prosecution may rely on circumstantial evidence to connect a defendant with the commission of a crime charged and to establish beyond a reasonable doubt that he was the perpetrator thereof. (*People* v. *Hillery,* 62 Cal.2d 692, 702 [44 Cal.Rptr. 30, 401 P.2d 382].) ■ Here the possession of recently stolen property with substantial corroborative evidence warrants the convictions for burglary. Among the items taken in the burglary of Helwig's residence on April 21, 1967 were a Mauser pistol, Colt .45 and an 1886 and 1891 silver dollar. Two days later two silver dollars —1886 and 1891—which "appeared to be" the coins taken from Helwig's residence, were found in Reed's pocket. (*People* v. *Hickok,* 198 Cal.App.2d 442, 444-445 [17 Cal.Rptr. 875].) Also on that day found in the stolen vehicle in which Reed was a passenger and which Gant was driving, were Helwig's Mauser pistol and Colt .45—the Mauser under the floormat under the passenger seat occupied by Reed, and the Colt under the dash to the right of the glove compartment. The inference is reasonable that both firearms were in the joint possession of Reed and Gant—they were readily accessible to each and in the exclusive possession of neither.

■ Possession of property recently stolen in a burglary alone is not itself sufficient to sustain a conviction of burglary but is so incriminating that to warrant a conviction there need only be slight corroboration in the form of statements and conduct of the defendant tending to show his guilt. (*People* v. *McFarland,* 58 Cal.2d 748, 754 [26 Cal.Rptr. 473, 376 P.2d 449]; *People* v. *Lyons,* 50 Cal.2d 245, 258 [324 P.2d 556]; *People* v. *Citrino,* 46 Cal.2d 284, 288-289 [294 P.2d 32].) ■ Here defendants made no effort to explain the

presence of the firearms in their vehicle, and Reed gave no explanation of his possession of the silver dollars; failure to show that possession of recently stolen property was honestly obtained is a circumstance tending to show guilt. (*People* v. *Citrino*, 46 Cal.2d 284, 288-289 [294 P.2d 32]; *People* v. *Jenkins*, 223 Cal.App.2d 537, 541 [35 Cal.Rptr. 776].) Another circumstance is Gant's brief attempt to escape the officer. When the Highway Patrol vehicle tried to apprehend defendants' car, Gant increased his speed to 100 miles an hour; while Gant finally pulled over to the side, it was not until the officer turned on the red light. This is some evidence of flight which was relevant to the burglary as well as to the theft of the vehicle inasmuch as some of the stolen property was found therein. (*People* v. *Wells*, 187 Cal.App.2d 324, 329 [9 Cal. Rptr. 384].) While the officer was writing a traffic citation, Gant voluntarily walked back to the patrol vehicle and initiated a conversation with the officer wherein "he kept changing his story from time to time" concerning his possession of the vehicle, where he had been, how long he had been driving it, etc. Inasmuch as the theft of the vehicle is interwoven with the Helwig burglary, for if the theft of the vehicle had not been discovered neither would Helwig's guns and silver coins, Gant's conflicting and inconsistent accounts tend to show a consciousness of guilt. (*People* v. *McClure*, 133 Cal.App.2d 631, 633 [284 P.2d 887].)

▉ Appellants claim that the evidence does not show that they knew the guns were in the vehicle thus they were not properly convicted of a violation of section 12025, Penal Code.[1] Defendants' knowledge of the presence of the weapons in the vehicle driven by Gant beside whom Reed was seated was a question for the trier of fact. (*People* v. *Burnett*, 251 Cal.App.2d 651, 657 [59 Cal.Rptr. 652].) Helwig's Mauser pistol was found tucked under the floormat under the front passenger seat on which Reed was seated. Not only would the close proximity and availability of the gun to Reed indicate knowledge on his part that the Mauser was there, but he had other property stolen from the Helwig residence in his possession—in his pocket he carried Helwig's two silver dollars. From Reed's possession of the stolen silver dollars the inference is reasonable that he knew of the presence of the stolen

---

[1]Section 12025, Penal Code, provides in pertinent part: ". . . [A]ny person who carries . . . concealed within any vehicle which is under his control or direction any pistol, revolver, or other firearm capable of being concealed upon the person without having a license to carry such firearm . . . is guilty of a misdemeanor, . . ."

Mauser in the vehicle. As to Gant, the entire vehicle was under his control inasmuch as he was the driver and took charge when asked by Officer Kinsey concerning the ownership and possession of the car. The Colt .45 was concealed under the dash to the right of the glove compartment and readily accessible to Gant. In addition, Gant's attempt to avoid the officer by increasing his speed from 90 to 100 miles an hour is indicative of his guilty knowledge of the presence of the stolen weapons.[2] It was reasonable for the trial judge to infer from the above that the vehicle was in the joint possession of Gant and Reed with Gant having actual control and direction; that both knew of the presence of the guns; that while neither had exclusive possession of the weapons they were readily available to each. The statute does not require that a defendant have the exclusive possession and control of the firearm. (*People* v. *Davis,* 157 Cal.App.2d 33, 36 [320 P.2d 88].) The evidence supports the findings of guilt.

■ Gant claims that he was not timely advised of his constitutional rights thus his conversation with Officer Kinsey was inadmissible. The evidence shows that after Officer Kinsey ran a registration check on defendant's vehicle and a "No Wants" had come back on the license plate numbers, he asked no further questions and began to write a citation for speeding. He did nothing other than walk back to the patrol vehicle and start to write the citation; he had no intention of doing anything else because it did not then appear to him that any more serious offense had been committed. While he was writing near the patrol car, according to the officer, "defendant Gant motioned for me to come to his vehicle, and I motioned for him to come to mine." Gant voluntarily walked back to the patrol car and a discussion followed in which Gant "kept changing his story from time to time." It is clear from the evidence that it was Gant who wanted to talk to the officer; it was Gant who "motioned" for Officer Kinsey to come to his vehicle, and when the officer refused walked back to the patrol car, and it was Gant who initiated the conversation. There is no evidence that Officer Kinsey wanted to talk to Gant, asked him any questions or engaged in any kind of interrogation. Up to then the investigation had been only routine but, when, in his discussion with the officer, Gant

---

[2] We have concluded that the evidence supports defendants' convictions of the Helwig burglary; thus from defendants' theft of the guns from the Helwig residence it can be inferred that they not only knew the guns were in the vehicle but placed them there.

changed his story several times, the officer became suspicious and asked him to remain at the patrol car until the registration informatiom came back over the air, and called a back-up unit. Shortly thereafter the back-up unit arrived, as did the registration information which showed that the car had been stolen. Defendants then were arrested, advised of their constitutional rights and placed in the patrol vehicle.

First, the officer was conducting nothing more than a routine investigation of the vehicle; it was not one which had begun to focus on a particular suspect for at that time the officer was not aware that a crime had been committed. (*People* v. *Singleton,* 255 Cal.App.2d 547, 549 [63 Cal.Rptr. 324].) The check of the license plate had not revealed that the vehicle was stolen. Second, Gant was not in custody; he was free to move about and voluntarily walked back to the patrol car and initiated the conversation with the officer. It was not until after Gant talked to the officer that he was asked to remain at the patrol car until Officer Kinsey received full registration information on the vehicle. Thereafter no statement was made by Gant. Third, the evidence does not show that Officer Kinsey engaged in a process of interrogation that lends itself to eliciting incriminating statements or that he asked any questions of any kind; it establishes only that a "discussion" or "conversation" took place in which Gant "kept changing his story." The receipt of this in evidence does not violate the rule of *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. (*People* v. *Mercer,* 257 Cal.App.2d 244, 247 [64 Cal.Rptr. 861].) From the record it appears that whatever "story" Gant kept changing was volunteered by him in an effort to explain his possession of the vehicle at a time when no explanation was asked.

The judgments are, and each of them is, affirmed.

Wood, P. J., and Fourt, J., concurred.