Filed 5/8/13  In re Brandon W. CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re BRANDON W., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRANDON W.,<br><br>    Defendant and Appellant. | A136656<br><br>(Alameda County<br>Super. Ct. No. SJ-12-189211) |

In this case, a petition was filed pursuant to Welfare and Institutions Code section 602, subdivision (a), alleging minor committed first degree burglary (Pen Code, § 459). On September 7, 2012, at a contested jurisdictional hearing, the juvenile court sustained the petition.  On September 21, 2012, the court declared appellant a ward of the court under the supervision of the probation department, finding that continued residing in the home of his grandmother was not in the best interests of the minor, and committed appellant to the care of the probation department.  The appellant now challenges the sustaining of this petition.  We affirm the judgment of the trial court.

### STATEMENT OF FACTS

On October 15, 2011, around 12:45 p.m. Yolanda Alexander-Maker approached her home at 1414 Fairview, Berkeley, California.  She is African-American.  She noticed two African-American youths pass her on the sidewalk.  One was medium-brown in skin

tone, the other light, each one was "fairly tall." They appeared to be in their teens or early twenties. When Alexander-Maker said "hello" to the youths, only the medium-brown skinned male responded. The other kept going. She then saw a third male following behind the two. She thought the three were together but they clearly were not walking together. This gave her a "bad feeling." Alexander-Maker had occupied her home for over 50 years. She knew the people in her neighborhood and had not seen the three youths before. As she entered her home, Alexander-Maker noticed the first two men were gone but the third person was resting on the trunk of a red Honda, looking up and down the street.

Alexander-Maker telephoned the police because she was suspicious. Looking out her front window, she saw the first two men walk down a driveway of a neighbor's home and speak with the man at the Honda. Alexander-Maker then saw the two go back up the neighbor's driveway and disappear. Alexander-Maker testified the appellant resembled the lighter-skinned male she saw on the street.

Jeanne Song lived in the home which had the driveway the two walked back and forth from, 1422 Fairview. It was a single-family residence. On October 15, 2011, Song and her daughter had gone to Santa Cruz around 8 a.m. Song locked her home before leaving. Around 6 p.m., while in the town of Santa Cruz, she received a phone message from Berkeley police. She returned the call and learned her home had been burglarized.

Song returned home on the 16th. She found a window in her living room broken and boarded up. The driveway was adjacent to this window. Song's burglar alarm went off when the intruders had exited her home. She also learned the sensor batteries in her windows did not operate properly.

Inside the home, Song saw that furniture had been moved. Her daughter's computer, iPod dock, some jewelry, a backpack and camera were missing. Cash was missing from Song's bedroom and the drawers were all open. Her computer was also

2

taken.  Song estimated the value of the stolen items at $10,000 to $15,000.  Song testified she did not know appellant and did not give him permission to enter her home.

Cuauhtemoc Vargas was a crime scene technician who responded to Song's home after the theft.  He was there on October 15, 2011, around 1:10 pm.  He dusted the window area that had been broken and was believed to be the entry point for the theft.  Vargas found five latent prints on the exterior glass of the window.  He concluded professionally the prints faced upwards, indicating someone placed them while pushing up on the window.

Elizabeth Troxel was a latent print analyst for the California Department of Justice.  She had eight years experience in this field.  She was a Certified Latent Print Examiner by the International Association of Identification.  When tested for her proficiency by outside agencies, she had always passed with no errors.  Troxel examined four of the five prints, Exhibit Nos. 5A to 5D.  Using the data base of the Automated Latent Print System, she received a list of suspects based on the prints entered.  She compared the prints from Song's window with the top candidate identified by the System.  Appellant was the top candidate.  Both sides stipulated appellant's prints were the prints from the Automated System.  After making her comparison, Troxel concluded the prints taken from Song's window belonged to the appellant.

## ANALYSIS

Appellant contends there is insufficient evidence to sustain the court's finding that appellant was involved in the burglary alleged in the petition.  We find the evidence supports the factual findings and legal conclusion of the commissioner.

When the claim is made on appeal of insufficient evidence in a delinquency proceeding, the standard of review is the same as in an adult criminal prosecution.  (*In re Roderick P.* (1972) 7 Cal.3d 801, 809.)  The test is whether the record contains any substantial evidence which supports the finding of the trier of fact, and we view this evidence in the light most favorable to that finding.  (*Id.* at p. 808.)  The test on appeal is

3

whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319; *In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1328.)

In this case, there is no contention the home of Ms. Song was burglarized. The appellant's challenge here addresses his responsibility for the offense. He argues the identification by Alexander-Maker in court was not reliable. He also claims there is insufficient evidence he entered the residence. Both contentions are without merit.

Critical to appellant's guilt is the physical evidence in the case. His fingerprints were found on the broken living room window, the acknowledged entry point used by the suspects in entering Song's home. Officer Vargas testified the prints were found facing upwards, a fact consistent with pushing the window upwards. Also, Song testified she did not know appellant and did not give him permission to be on her property.

Our Supreme Court has "repeatedly emphasized that fingerprints are the strongest evidence of identity and *ordinarily are sufficient by themselves to identify the perpetrator of the crime.*" (*People v. Figueroa* (1992) 2 Cal.App.4th 1584, 1588, emphasis added, citing *People v. Andrews* (1989) 49 Cal.3d 200, 211. See also, *People v. Johnson* (1988) 47 Cal.3d 576, 601; *People v. Gardner* (1969) 71 Cal.2d 843, 849.) In *People v. Bailes* (1982) 129 Cal.App.3d 265, the only evidence linking defendant to the charge was the discovery of his fingerprint on a bathroom window screen. That was sufficient to sustain his burglary conviction against a challenge based on insufficiency of the evidence. "[C]ases have held that evidence of a fingerprint, palm print, or footprint left inside a structure or at a point of unusual access is alone sufficient to support a burglary conviction." (*Id.* at p. 282, and cases cited therein.) In *Bailes,* defendant's print was found on the screen that had been bent to allow access. (*Id.*) Here, the prints of appellant were found on the broken window pane which was the clear point of entry.

The presence of appellant's prints at the illegal entry point, along with his lack of any valid nexus with the victim's home and Ms. Song's unfamiliarity with him, provide sufficient evidence to support the finding of the trier of fact.

Additionally, Alexander-Maker testified at the hearing appellant resembled one of the three men she saw moments before the commission of the crime. She passed appellant at approximately 12:45 p.m. on the day of the crime. Vargas, the police technician, arrived and found the latents at 1:10 p.m. In between, Alexander-Maker saw the lookout in front of the home and appellant and his ally going back and forth along the victim's driveway. This tight time period is significant support of the trial court's factual determination. Also, the suspects' conduct was so suspicious Alexander-Maker was compelled to call the police.

We know the testimony of one witness is sufficient to prove identity. We defer to the trier of fact in assessing the weakness of such identification, especially in light of cross-examination. (*People v. Elwood* (1988) 199 Cal.App.3d 1365, 1372–1373.) Testimony the defendant "resembles" the suspect is enough on appeal. (*People v. Wiest* (1962) 205 Cal.App.2d 43, 45–46.) An eyewitness need not be "positive" in her identification. (*People v. Midkiff* (1968) 262 Cal.App.2d 734, 740.)

It is true Alexander-Maker testified she had a glance at appellant as he passed her on the street. However, it was at a time when she was not under stress from any criminal assault. The men she saw triggered a curiosity on her part. She had lived in the neighborhood for more than 50 years. She knew her neighbors. She felt the young men's behavior unusual enough to call police quickly. When she passed appellant he was only six to eight feet away from her. Alexander-Maker also testified, "[Appellant was] about the same height [as the suspect]. I consider him light skinned in my book. He looks like the gentleman as far as I know."

5

During the hearing, the court did question Alexander-Maker regarding her in-court identification. Also, the judicial officer noted there were no cross-racial identification issues because the witness was also African-American.

In summary, the evidence of the fingerprints is substantial evidence in this case. There is no challenge presented to the procedures used by the police in obtaining the evidence and the analysis performed by witness Troxel. The trier of fact apparently found the eyewitness identification by Alexander-Maker sufficient to support the finding sustaining the petition.

We affirm the judgment.


                                         _____

                                         Dondero, J.


We concur:


_____

Margulies, Acting P. J.


_____

Sepulveda, J.