Filed 7/24/13  P. v. McHenry CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B240419 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA118339) |
| v. | |
| CHRISTOPHER STEVEN MCHENRY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kelvin D. Filer, Judge.  Affirmed as modified.

J. Kahn, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

After Miguel Flores was shot and killed, a jury convicted Christopher Steven McHenry of first degree murder and found true the alleged firearm-use and criminal street gang enhancements. McHenry contends there was insufficient evidence of his identity as the shooter. We affirm the judgment as modified to correct a sentencing error.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Charges*

The Los Angeles County District Attorney charged McHenry in an information with the first degree murder of Flores (Pen. Code, § 187) with special allegations that McHenry personally and intentionally discharged a firearm which caused great bodily injury or death (Pen. Code, § 12022.53, subd. (d)) and that the offense was committed for the benefit of, at the direction of, or in association with a criminal street gang, and with the specific intent to promote, further, or assist in criminal conduct by gang members (Pen. Code, § 186.22, subd. (b)). McHenry pleaded not guilty to the charge and denied the enhancement allegations.

2. *The Jury Trial*

   a. *The shooting*

At around 11:00 p.m. on May 28, 2011, Flores, a South Side Florencia gang member, had an altercation with another male guest at a house party in Los Angeles. The two men briefly exchanged words and engaged in a shoving match. Moments later, the male guest shot Flores several times with a handgun, and fled from the party. Flores collapsed and died after suffering multiple gunshot wounds. On May 29, 2011, McHenry was arrested.

   b. *Eye-witness identification evidence*

Rigoberto Gurrola, Ruben Zaldivar, Arzelia Vega, and Kassandra Macedo were guests at the party and witnessed the shooting. Rigoberto Gurrola testified he and Flores came to the party together and joined approximately 50 people in the backyard, who were dancing and drinking. Close to fifteen people were gathered around a table to buy

2

balloons filled with nitrous oxide. Flores and the shooter confronted each other at the table, five to six feet from Gurrola. An argument ensued, during which Flores said, "South Side Florencia." The shooter walked away, and Flores reassured Gurrola that nothing was wrong. Moments later the shooter returned, carrying a handgun. From a distance of two to three feet from the shooter, Gurrola saw him fire several shots at Flores, who fell to the ground.

Gurrola described the shooter to the police as dark-skinned, with short dark hair, and "skinny, approximately five feet eight to five feet nine inches in height and approximately 160 pounds in weight. He also told officers the shooter was wearing an orange jersey and dark pants. The day after the shooting, Gurrola identified McHenry as the shooter in a six-pack photographic lineup prepared by the police. He also repeatedly identified McHenry at trial as the man who had argued with Flores and then shot him at the house party.

Ruben Zaldivar was in the backyard at the time of the shooting when he heard someone say "bitch." Zaldivar turned and saw Flores and another man arguing and shoving each other approximately seven and a half feet away. When the two men separated, Zaldivar told Flores to relax. The other man walked towards the alley behind the backyard. Moments later, the man was standing five to six feet away from Zaldivar, shooting at Flores.

Zaldivar described the shooter to the police as a dark-skinned Hispanic, with short black hair, approximately five feet ten or five feet eleven inches in height and approximately 170 pounds in weight. Zaldivar also told officers the shooter wore jeans and a blue jersey, which he removed at some point, and put on a grey hooded sweatshirt. Zaldivar was unable to identify McHenry as the shooter in a six-pack black and white photographic lineup. He told the police the photograph of McHenry looked "close," as depicting someone who was dark-skinned and skinny. On June 1, 2011, Zaldivar identified McHenry as the shooter in a six-pack color photographic lineup. He also identified McHenry as the shooter at trial. Zaldivar testified there was no question in his mind that the shooter was the same person he saw arguing with Flores at the house party.

3

Arzelia Vega was dancing with her friend, Kasandra Macedo when she saw Flores and another man involved in a confrontation approximately one and a half to two feet away. Vega heard the man demand to know where Flores was from, which Vega understood to be a gang-related challenge. Fearing their dispute would lead to violence, Vega thrust her hand between the two men and said, "Stop." The argument stopped, and the man walked away from Flores, bumping into Vega as he headed towards the driveway. The man soon returned, pulled out a gun and began firing it at Flores.

Vega described the shooter to the police as a dark-skinned Hispanic man, with close-cut hair, approximately five feet ten inches in height and approximately 145 pounds in weight. She also stated the shooter was wearing jeans and a black sweater with horizontal stripes near the collar. Officers showed Vega a photograph of McHenry on the night of the shooting, and she identified him as the shooter. On May 30, 2011, Vega identified McHenry as the shooter to the police in a photographic six-pack and said she was "sure" of her identification. Vega confirmed at the preliminary hearing and at trial that the man she had identified in the photographic lineup was the shooter. She did not identify McHenry at trial as the shooter.[1]

After witnessing the shooting with Vega, Kassandra Macedo told officers the shooter was dark skinned, "very skinny," with "a short, close haircut," and approximately five feet nine inches in height. On June 1, 2011, Macedo identified McHenry as the shooter to the police in a six-pack photographic line-up. At the time, Macedo told the officer, "I think that's the guy that shot." On a scale of one to ten, Macedo gauged her certainty at "five or six" because "it kind of looks like him." At trial, Macedo initially testified she did not see the shooter in court. However, later in her testimony Macedo identified McHenry as the person who shot Flores.

---

[1] At trial, Vega acknowledged that she had been afraid to testify at the preliminary hearing, believing the shooting was gang-related, and that she was not appearing at trial voluntarily. Vega also testified she was no longer afraid and did not think the person she had previously identified in a photograph as the shooter was presently in court.

A photograph of McHenry taken after his arrest on May 29, 2011 was introduced into evidence. When McHenry was being booked into jail, he gave his race as Hispanic, his weight as 160 pounds and his height as five feet eleven inches.

No testimonial evidence was offered by the defense.[2]

3. *The Verdict and Sentencing*

The jury found McHenry guilty of first degree murder and found true the fire-arm-use and criminal street gang enhancement allegations. At sentencing the trial court imposed an aggregate state prison term of 50 years to life, consisting of 25 years to life for first degree murder, plus 25 years to life for the firearm-use enhancement.[3]

---

[2]    The only evidence McHenry introduced in his defense was a transcript and an audio recording of Kassandra Macedo's photographic identification of McHenry to police. The recording was played for the jury.

[3]    The trial court declined to impose the criminal street gang enhancement apparently based on a misinterpretation of *People v. Brookfield* (2009) 47 Cal.4th 583. Because the jury found McHenry had personally used a firearm to commit the gang-related murder, imposition of the Penal Code section 186.22, subdivision (b) enhancement was not prohibited. (*Brookfield, supra*, at p. 590; Pen. Code, § 12022.53, subds. (e)(1) & (2).) Accordingly, even though the minimum parole eligibility of 25 years will not be directly affected, the court should have imposed the minimum parole eligibility of 15 years. (Pen. Code, § 186.22, subd. (b)(5); *People v. Lopez* (2005) 34 Cal.4th 1002, 1009.) We order the judgment modified to reflect this term.

## DISCUSSION

McHenry does not deny he was at the house party on the night of the shooting. He contends there was insufficient evidence to support his murder conviction because the People's case rested solely on unreliable and inconsistent identifications of him as the person who shot and killed Flores.[4]

### 1. *The Standard of Review*

To assess a claim of insufficient evidence in a criminal case, "we review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

### 2. *Substantial Evidence Supports the Conviction*

It is well settled the testimony of a single witness, if believed by the finder of fact, is sufficient to support a conviction. (See Evid. Code, § 411 ["[e]xcept where additional

---

[4]    McHenry is not challenging the pretrial or trial identification procedures used in this case.

evidence is required by statute, the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact"]; *People v. Young* (2005) 34 Cal.4th 1149, 1181 ["unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction"].) Thus, a single witness's identification of the defendant may be sufficient to sustain his or her conviction. (See *People v. Boyer* (2006) 38 Cal.4th 412, 480 ["[i]dentification of the defendant by a single eyewitness may be sufficient to prove the defendant's identity as the perpetrator of a crime"].)

Here, McHenry was identified as the shooter by four separate eyewitnesses. Gurrola first identified McHenry as the shooter in a photographic lineup that was shown to him the day after the shooting. Gurrola then repeatedly identified McHenry as the shooter at trial. Zaldivar also identified McHenry as the shooter in a photographic lineup that was shown to him four days after the shooting, and he also made an in court identification of McHenry at trial. Vega identified McHenry as the shooter in a photograph on the night of the shooting and in a photographic lineup two days after the shooting. Vega told police at the time she was positive about her identification. Macedo also identified McHenry as the shooter in a photographic lineup four days after the shooting and again at trial.

It is true, as McHenry maintains, there were discrepancies in some of the eye-witness identifications. Vega did not identify McHenry as the shooter at trial. Nonetheless, not only had Vega previously identified McHenry as the shooter in a photographic lineup, she also confirmed at the preliminary hearing and at trial the person she had previously identified in the photographic lineup was the shooter. (See *People v. Boyer, supra,* 38 Cal.4th at p. 480 [out-of-court identification "can, by itself, be sufficient evidence of the defendant's guilt even if the witness does not confirm it in court"]; *People v. Cuevas* (1995) 12 Cal.4th 252, 257, 267-269, 271-272.) Thus, even though

7

Vega failed to independently identify McHenry in court, the evidentiary value of her out-of-court identification was not necessarily negated.[5] (*Id.* at p. 265.)

McHenry also relies on the fact that Macedo told the police she thought, rather than was certain, that McHenry's photograph was that of the shooter, although she ultimately identified him as the shooter at trial. An identification need not be free from doubt to have evidentiary value. (See, e.g., *People v. Midkiff* (1968) 262 Cal.App.2d 734, 740 ["identification of the defendant need not be positive"]; *People v. Robarge* (1952) 111 Cal.App.2d 87, 98 ["fact that a witness may to some extent qualify his testimony as to identification, goes to the weight of such testimony and is addressed to the sound discretion of the triers of fact"].) Indeed, a witness's statements a suspect resembled or looked like the culprit may be sufficient evidence. (See *People v. Wiest* (1962) 205 Cal.App.2d 43, 45 ["[t]estimony that a defendant 'resembles' the robber [citation] or 'looks like the same man' [citation] has been held sufficient"].)

The jury was presented with vigorous cross-examination of the eyewitnesses by defense counsel, who subsequently argued McHenry had been misidentified. The trial court instructed the jury to evaluate several factors in considering the eyewitness testimony given, including the believability of the eyewitness, the opportunity of the witness to observe the alleged criminal act, the stress the witness was subjected to at the time of the attack, the cross-racial or ethnic nature of the identification. (CALCRIM No. 315) The jury was therefore apprised of the considerations to be used in evaluating eyewitness testimony.

While our courts have long been troubled by the implications of eyewitness fallibility, (see *United States v. Wade* (1967) 388 U.S. 218, 228 [87 S.Ct. 1926, 18

---

[5] After hearing Vega testify she had not wanted to appear at the preliminary hearing or at trial because she believed the case was gang related, the jury reasonably could have concluded Vega's failure to identify McHenry in court as the shooter was the simple result of fear. As this court has stated, "[j]urors are the sole judges of a witness's credibility and they are rightfully suspicious of trial testimony which deviates 180 degrees from what the witness told the police . . . ." (*People v. Jackson* (2005) 129 Cal.App.4th 129, 167.)

8

L.Ed.2d 1149]).  "The question of identification of the perpetrator of a crime is one for determination by the trier of fact and unless the evidence of identity is so weak as to constitute no evidence at all this court cannot set aside the decision of the trial court." (*People v. Kittrelle* (1951) 102 Cal.App.2d 149, 154.)  Here, there was substantial evidence of McHenry's identity as the person who shot and killed Flores.

## DISPOSITION

The judgment is ordered modified in accordance with this opinion.  The superior court is directed to prepare a corrected abstract of judgment and to forward it to the Department of Corrections and Rehabilitation.


ZELON, J.


We concur:


PERLUSS, P. J.


WOODS, J.

9