Filed 6/9/25  P. v. Gebauer CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B331503 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. YA105929 |
| v. | |
| CRAIG DAVID GEBAUER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Hector M. Guzman, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Natalie Cohen and Andrew F. Alire, under appointments by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

Craig David Gebauer appeals from his conviction for assault with a firearm, carrying a loaded firearm in a vehicle, and carrying a concealed firearm in a vehicle under the defendant's control or direction. We affirm Gebauer's conviction for assault with a firearm, concluding the trial court did not abuse its discretion in striking the testimony of a witness who asserted her Fifth Amendment rights and refused to answer questions. As to all three counts, we conclude the court erred in permitting the prosecution to impeach Gebauer with a prior conviction for simple possession of a controlled substance, but that error was not prejudicial. Finally, we reverse Gebauer's conviction for carrying a concealed firearm in a vehicle, finding the evidence was insufficient to prove he had control or direction of the vehicle in which the firearm was found.

## FACTS AND PROCEDURAL BACKGROUND

### 1. *Gebauer points a revolver at Carly Martinez*

On May 25, 2022, around 9:00 p.m., Carly Martinez parked her car on the street outside her residence. She got out to see if she'd left enough space around the car. Martinez heard someone shouting. She "kind of looked around and there was another person a few cars behind [her], so [she] assumed that the person who was yelling was yelling at that person." The person who was shouting—later identified as Gebauer—said, " 'Get your ass over here.' " He seemed angry.

Martinez got back in her car to turn it off and gather her belongings. She looked up and realized the person across the street, who had been yelling, was holding a gun at waist level and pointing it at her. She could see the barrel of the gun pointed toward her. The gun looked like a revolver, but its barrel was not as long as those in the old cowboy movies. Martinez

2

"saw a glint," so she thought the gun was silver or gray in color, "something that would catch the light." That light came from a streetlight; Gebauer was standing in front of a black BMW stopped under the streetlight. The BMW was in a red zone and seemed to be "idling, waiting."

After Gebauer told the person a few cars away from Martinez to "[g]et your ass over here," he said, "Oh, I see you brought your friends here," apparently referring to Martinez. The female Gebauer was yelling at then walked slowly back to the BMW. Gebauer put the gun down, then he got into the front passenger seat, the female got into the back seat, "and they left." Martinez couldn't see the BMW's driver.

Martinez ran to her house and called 911. She gave the police descriptions of the car, including the license plate number, the person who'd pointed the gun at her, and the gun.

Between 9:00 and 9:30 that night, Deputy Sheriff Angel Ochoa went to Martinez's home after receiving a call. Martinez gave Ochoa "a partial plate on a vehicle and the description of the suspect." Redondo Beach police and "assisting units" from the sheriff's department then stopped the BMW. Ochoa took Martinez to do a field show-up.

Ochoa searched the BMW. As he walked up to the passenger side he saw a black holster on the sidewalk. Ochoa found a revolver with live rounds of ammunition in it under the passenger front seat. The footage from Ochoa's body camera was played for the jury at trial. The revolver was not registered to Gebauer.

2.     *The charges, trial, and verdicts*

The People charged Gebauer with assault with a firearm on Martinez in violation of Penal Code section 245, subdivision

(a)(2)[1] (count 1); carrying a loaded handgun, not registered to him, on his person or in a vehicle in violation of section 25850, subdivision (a) (count 2); and having a concealed firearm, not registered to him, in a vehicle that was under his control or direction in violation of section 25400, subdivision (a)(1) (count 3). The People also alleged, under section 25400, subdivision (c)(6), that the firearm was loaded and "unexpended ammunition [was] in the immediate possession of, and readily available to," Gebauer.

Gebauer testified on his own behalf at trial. Gebauer said he and his girlfriend Marissa McPheeters went to pick up McPheeters's daughter Alyssa. Gebauer got out of the car, saw Alyssa, and called to her to "get [her] ass in the car." Alyssa came over, she followed Gebauer to the car, he got in the front seat, Alyssa got in the back, "and we drove away."

Gebauer denied having "pulled a gun" on Martinez, having had a gun in his possession while he was standing outside the car, or having held a gun at his waist while waiting for Alyssa. He said he'd never seen Martinez before she came to court. Gebauer admitted he had been in the car "where that weapon was found." When asked on cross-examination, "So essentially you're calling Ms. Martinez a liar; is that what you're saying?" Gebauer replied, "Yes."

Gebauer testified he'd had the holster between the seat and the door and, when he got out of the car, the holster fell out onto the ground. Gebauer admitted the holster was for the

---

[1]    References to statutes are to the Penal Code unless otherwise stated.

4

revolver and he'd put the revolver under the passenger seat that day.

Alyssa McPheeters testified she didn't see Martinez on the street that night and Gebauer never had a gun in his hands. Alyssa told the jury Gebauer was "a father figure" to her: "I see him as my dad."

The jury convicted Gebauer on all three counts. The court denied Gebauer's motion for a new trial and sentenced him to the low term of two years in the state prison on count 1. The court imposed the midterm of two years on count 2, to be served concurrently with count 1. The court also imposed the midterm of two years on count 3 and then stayed that sentence under section 654.

## DISCUSSION

1. ***The trial court did not abuse its discretion in striking Marissa McPheeters's testimony after she asserted her right against self-incrimination and refused to answer any questions about the gun***

   a. *McPheeters's testimony and invocation of her Fifth Amendment rights*

   The prosecution called McPheeters as a witness in its case-in-chief. McPheeters testified she was driving her black BMW on May 25, 2022, around 9:00 p.m. McPheeters was going to pick up her daughter Alyssa and Gebauer was with her. McPheeters was "calling [Alyssa] frantically on the phone because [she] could not find her." Gebauer got out of the car and "was yelling at [Alyssa] to get in the vehicle."

   McPheeters was looking down at her phone; Gebauer's back was to her. She "did not see him" because she was "looking towards the left." McPheeters testified she never saw Gebauer

5

point a firearm at anyone. She didn't see anybody on the street or anyone in a car on the street. McPheeters said she didn't see Gebauer with a firearm when he came back to the car, she was not aware he had a firearm, and he never told her he did.

McPheeters testified she "recognize[d]" the holster but she didn't see it in the car nor did she see it fall "off of [Gebauer's] person" when he got out of the car at the traffic stop. McPheeters testified the gun was her father's and she kept it in Gebauer's safe, "a safe that we both used."

Defense counsel began her cross-examination of McPheeters and, after a few questions, the court recessed for the day. After the jurors left, the prosecutor told the court that it "may want to appoint Fifth Amendment counsel for Ms. McPheeters." The prosecutor said he hadn't been aware Gebauer and McPheeters were living together, and McPheeters's testimony that they shared the safe where the gun was kept "gives rise to some criminal liability on her part" because McPheeters must have known Gebauer, with a felony drug conviction from Colorado, was not permitted to have a firearm.

When trial resumed, the prosecutor told the court he'd spoken with McPheeters in the hallway and told her he'd "ask the court to appoint her counsel, and it would need to be a criminal defense attorney, because of the testimony." The prosecutor cited several provisions of the Penal Code that he said prohibited "transferring a firearm to a prohibited person."[2]

---

[2] The prosecutor cited sections 26500, 27500, and 27545. On appeal Gebauer concedes that at least section 27500 "could expose Ms. McPheeters to criminal liability." That statute provides no person shall knowingly supply, deliver, or give

6

A short time later, attorney Paul Peters from the bar panel appeared in the courtroom and the court appointed him to advise McPheeters. After conferring with Peters, McPheeters took the stand without the jury in the courtroom. In response to the court's questions, McPheeters testified she was asserting her privilege against self-incrimination "pertaining to the firearm." The prosecutor then asked McPheeters, "[D]id you possess the revolver that was discussed . . . [;] was that stored in your home?" McPheeters replied, "I'm exercising my right to remain silent about the firearm." In response to the prosecutor's next seven questions, McPheeters stated, "Exercise the fifth." At that point, the court halted the questioning.

After McPheeters left the courtroom, the court stated, "So now the witness has asserted her privilege against self-incrimination. The issue now becomes whether her entire testimony should be stricken." The prosecutor asked the court to strike all of McPheeters's testimony and to instruct the jury to disregard it. Defense counsel said she "believe[d] that her testimony should stand as it is."

The court stated,

> "I don't see how any of her testimony could be left in without further inquiry into these issues that are still outstanding, and primarily the issue of the gun, where it was, who owned it, all of those things . . . . I don't see how I can just leave that in there without complete direct and cross-examination."

---

possession of a firearm to any person who is prohibited by law from possessing a firearm. (§ 27500.)

7

After a further colloquy with counsel, the court stated McPheeters's "assertion of her Fifth Amendment right" was "properly asserted" and "well-taken."  The court said it was "not going to force her to testify."  The court continued, "I cannot allow her to testify partially on some issues but not have to deal with what could be impeaching information.  It doesn't work that way."  The court then brought the jury back in and told them McPheeters's testimony had been "stricken in its entirety" and the jurors must disregard it and "must not consider that testimony for any purpose."  The court denied Gebauer's motion for a mistrial.

> b.     *McPheeters's credibility was not a collateral matter and the prosecutor's questions—which she refused to answer—were not peripheral to the case*

"Generally speaking, a defendant is 'not entitled to place [his witness's] testimony before the [trier of fact] free from any threat of impeachment' by the prosecution, even if the witness has a valid Fifth Amendment privilege." (*People v. Seminoff* (2008) 159 Cal.App.4th 518, 527 (*Seminoff*).)  There are, however, "instances where the cross-examiner's questions are so peripheral to the case that the witness's refusal to answer them does not justify the sanction of striking [the witness's testimony]." (*Ibid*.)  In deciding whether to strike a defense witness's testimony based on her refusal to answer one or more questions, the trial court should examine the motive of the witness and the materiality of the answer.  (*People v. Reynolds* (1984) 152 Cal.App.3d 42, 47 (*Reynolds*).)  The court should also consider if less severe remedies are available before employing the "drastic solution" of striking the witness's entire testimony.  (*Id*. at pp. 47–48.)  "Striking the testimony is the appropriate remedy in most cases;

8

a mistrial will not be granted unless incurable prejudice is shown." (3 Witkin, Cal. Evidence (6th ed. 2024) Presentation at Trial, § 250.)

We review a trial court's decision to strike a witness's testimony for abuse of discretion. (*People v. Brooks* (2017) 3 Cal.5th 1, 26, 30–32 (*Brooks*); *Seminoff*, *supra*, 159 Cal.App.4th at pp. 525, 528; *Reynolds*, *supra*, 152 Cal.App.3d at p. 47.)[3]

---

[3]     Citing *People v. Cromer* (2001) 24 Cal.4th 889 and *People v. Sanders* (2010) 189 Cal.App.4th 543, Gebauer contends our review should be de novo. *Cromer* was a confrontation clause case. Our high court held the standard of review for evaluating a trial court's determination of whether the prosecution had exercised due diligence in trying to locate a witness, before that witness's prior testimony could be presented at trial, was independent, de novo review rather than the more deferential abuse of discretion test. (*Cromer*, at pp. 892–893.) *Sanders* involved a challenge to a trial court's order striking only part of a witness's testimony—rather than all of it—after the witness refused on recross-examination to identify who told him another suspect in a shooting was a gang member. The witness already had testified at length on direct and cross-examination about the shooting, his identification of the two shooters, and his preliminary hearing testimony. (*Sanders*, at pp. 546, 550, 552–553, 557.) The *Sanders* court concluded the trial court had not erred in declining to strike the witness's testimony after he refused to answer one question on the collateral matter of the source of the rumor. (*Id.* at p. 558.) While noting a trial court " 'ought to have a measure of discretion in ruling on [whether to strike testimony]' " when a witness refuses to answer questions, the *Sanders* court stated in a footnote that its review was independent rather than for abuse of discretion because the appeal presented an issue of "federal constitutional error." (*Id.* at p. 554 & fn. 2.) The court did not discuss or distinguish cases such as *Reynolds* that applied an abuse of discretion standard.

9

Gebauer contends McPheeters asserted her Fifth Amendment right "solely as to where Mr. Gebauer stored his firearm," and that issue wasn't "relevant or material." Gebauer reads the record too narrowly. The gun was a key issue in the case. It was the weapon the victim testified had been pointed at her, and it was the subject of two felony charges for the possession of the firearm in McPheeters's car. McPheeters asserted her constitutional right and refused to answer the prosecutor's questions about whether she possessed the revolver, when she received it from her father, how long the safe had been in her home, whether the revolver had been stored in that safe, whether Gebauer had access to the safe, where the ammunition for the revolver was, and whether any ammunition was stored in her home. Based on her refusal to answer all of those questions, as well as her counsel's confirmation to the court that McPheeters was "going to be asserting her Fifth Amendment privilege not to testify," the court reasonably concluded she wasn't going to answer any questions about the gun.

Gebauer contends the questions the prosecutor planned to ask McPheeters on recross[4] were " 'peripheral to the case' "

---

Gebauer acknowledges the California Supreme Court applied the abuse of discretion standard of appellate review as recently as 2017 in *Brooks*, *supra*, 3 Cal.5th 1. As this is not a confrontation clause case as in *Cromer*, we continue to follow the guidance of our high court as well as the many courts of appeal that have applied an abuse of discretion standard in cases like this.

[4] The facts here are a bit different from the usual case in which the defendant himself testifies or calls a defense witness, whom the prosecutor then cross-examines. Although the People

10

and they related only to the " 'collateral matter' " of McPheeters's credibility as a third-party witness. Yet he also contends McPheeters was "a key eyewitness who maintained that she never saw [Gebauer] hold the firearm" or tell Alyssa " 'I see you've called your friends here.' " Gebauer cannot have it both ways. The prosecutor sought to challenge McPheeters's testimony that she never saw Gebauer with the gun that night, and she didn't even know it was in the car, by asking her about Gebauer's access to the gun, whether she'd let him use it, and so forth. These questions had a "clear and logical bearing on her connection" to the gun and her answers would have "directly touched upon her interest in the case." They therefore were "crucial to assessing her credibility." (See *Seminoff, supra*, 159 Cal.App.4th at p. 526.)

2. ***Any error in permitting the prosecutor to impeach Gebauer with his conviction for simple possession of a controlled substance was not prejudicial***

During a hearing on motions in limine, the prosecutor told the court he intended to impeach Gebauer—if he testified—with prior drug convictions from Colorado. Several days later, counsel again discussed the issue with the court. Defense counsel told the court Gebauer had "several Colorado convictions for drug-related offenses," but most of them were more than 10 years old. The prosecutor sought to introduce a 2018 conviction for

---

called McPheeters as a witness, she was essentially a defense witness.

11

possession of a controlled substance.[5]  Defense counsel objected and asked the court "to exclude it as not being relevant to this trial and under [Evidence Code section] 352."  The court stated the prosecution "will be allowed to use that prior" "[f]or impeachment purposes," finding it "relevant on the issue of credibility."  The court said it had "gone through all the . . . 352 factors and [did] not find that it is wholly prejudicial."

When Gebauer testified, defense counsel asked him if he'd been convicted of a drug possession charge and Gebauer answered, "Yes."  On cross-examination, the prosecutor asked Gebauer if that conviction was for a felony and Gebauer replied, "Yes."

As Gebauer notes on appeal, simple possession of a controlled substance is not a crime of moral turpitude and therefore may not be used to impeach a witness's testimony. (*People v. Castro* (1985) 38 Cal.3d 301, 317.)  Accordingly, it was error for the trial court to permit the prosecutor to ask Gebauer about his 2018 conviction.  (*Ibid.* [defendant should not have been impeached with his conviction for possession of heroin at all].)

The Attorney General contends Gebauer's trial counsel "did not claim the prior conviction did not involve moral turpitude" and, therefore, he has forfeited the claim.  While counsel did not make that precise argument about moral turpitude, she did object to the proposed impeachment on relevance and Evidence Code section 352 grounds.  This objection was sufficient to preserve the issue.  (See *People v. Clark* (2011)

---

[5]    We grant Gebauer's unopposed (1) Motion to Augment the Record on Appeal with a certified record of his 2018 conviction for possession of a controlled substance in 2015, and (2) Motion for Judicial Notice of the Colorado statute to which Gebauer pled.

12

52 Cal.4th 856, 931 [" 'the admissibility of any past misconduct for impeachment is limited at the outset by the relevance requirement of moral turpitude' "].) In any event, we exercise our discretion to consider the issue on the merits.

While we agree the court erred, Gebauer has not demonstrated that the error was prejudicial. Simple possession of a controlled substance is not a crime of violence nor does it involve a weapon. The jurors listened to Martinez's testimony and then Gebauer's (as well as Alyssa's), and decided whom they believed. On this record, it is not reasonably probable that a result more favorable to Gebauer would have occurred in the absence of the error. (See Cal. Const., art. VI, § 13.)

**3.** ***Gebauer's conviction on count three must be reversed***

a. *The jury's questions and the court's responses*

Section 25400, subdivision (a)(1) provides, "(a) A person is guilty of carrying a concealed firearm when the person does any of the following: (1) Carries concealed within any vehicle that is under the person's control or direction any pistol, revolver, or other firearm capable of being concealed upon the person." (§ 25400, subd. (a)(1).) The fourth element of the offense that the People must prove is "[t]he vehicle was under the defendant's control or direction." (See CALCRIM No. 2521.)

The testimony at trial established McPheeters and Gebauer drove to the location to look for Alyssa. McPheeters drove and Gebauer was the passenger.[6] Gebauer got out of the car; McPheeters stayed in the driver's seat with the motor running.

---

[6] As we noted, in testimony that later was stricken, McPheeters testified the BMW was her vehicle and she was driving.

13

After Gebauer told Alyssa to get "her ass" in the car, she did. McPheeters then drove the car away with Gebauer in the front passenger seat.

Addressing count 3 in his closing argument, the prosecutor told the jury, "[T]he law doesn't say exclusive control." He continued,

> "It merely says it's under the defendant's control or direction. What does that mean? We have testimony that the vehicle actually stayed at the location until the defendant got back into it with Alyssa. At the point he got in, it left. That shows some control over direction [*sic*]. It also showed that they arrived together."

Defense counsel didn't address either of the gun counts in her closing argument.

During deliberations, the jury sent out a note that referred to instruction 2521 and asked, "Question: Can you please clarify 4, where it says 'The vehicle was under the defendant's control or direction'? [¶] Can you further explain 'control or direction'?"

The court conferred with counsel. The court noted the citation, in "RELATED ISSUES" under CALCRIM No. 2521, of *People v. Davis* (1958) 157 Cal.App.2d 33, 36 (*Davis*).[7] The court

---

[7] Davis was convicted of violating former section 12025, the predecessor of section 25400, subdivision (a)(1). (*Davis, supra,* 157 Cal.App.2d at p. 34.) In that case, police stopped Davis, who was driving a car with three passengers in it. Police found a loaded revolver under the driver's seat. One of the passengers testified she saw a fellow passenger—and not Davis—put the gun

told counsel, "So I propose to simply tell them in regard to their specific question, the statute does not require that the defendant have exclusive possession and control of the firearm [*sic*]." Defense counsel said, "Submit it."

Counsel later appeared again before the court. (The chronology is not clear from the record.) The court stated CALCRIM No. 2304 includes "additional language" "regarding possession." (CALCRIM No. 2304 concerns possession of a controlled substance.) The prosecutor asked the court to give that language as well as language that "A person does not have to actually hold or touch something[ ] to possess it. It is enough if the person has control over it or the right to control it, either personally or through another person." (CALCRIM No. 2304.) Defense counsel objected.

The prosecutor then mentioned CALCRIM No. 2511, the instruction for possession of a firearm "by [a] person prohibited due to conviction." That instruction states, "Two or more people may possess something at the same time." The court said, "But here's the issue, . . . because they're not asking about the firearm. They're asking about the car." Defense counsel noted CALCRIM No. 2521 "doesn't address this specific issue." Counsel objected

---

under the seat. (*Id.* at p. 35.) The court held the law did not require Davis himself to have put the gun under the seat in order to be guilty of the crime. The court stated, "The statute does not require that the defendant have the exclusive possession and control of the firearm." (*Id.* at p. 36.) Davis, the court continued, owned the car, had control or direction of the vehicle, and knew the gun was concealed in the car. (*Ibid.*) The *Davis* court did not suggest—much less hold—that two or more people could have control or direction of a vehicle.

to "tak[ing] language from another completely different set of crimes," adding, "We're talking about the car itself, did Mr. Gebauer have direction and control of the vehicle." Counsel stated the notion that "two people can have control and direction of the same vehicle" was not accurate, and that's not what the Legislature intended. The court replied, "I would tend to agree with that."

After further discussion, the court stated, "[F]or now, I'm going to simply direct them back to that CALCRIM instruction and then finish by saying if you have any additional questions, please let us know." The court apparently did that. Written at the bottom of the question form is, "Please look at all instructions, specifically 2521 again. [¶] If you continue to have any questions, please let us know."

The jury then sent the form back again with another question: "Is there a definition of (#4) of 25400: 'under the control or direction?' Additionally, if there is no definition, does the court agree with the prosecutor's definition of control and direction in his closing statement?"

The court eventually gave—over defense counsel's objection—the jury the language the prosecutor requested about "possession" of an object.[8]

---

[8] In deciding to give that additional language, the court cited *People v. Padilla* (2002) 98 Cal.App.4th 127. *Padilla*, however, involved a different statutory provision. There, the defendant was convicted of violating former section 12025, subdivision (a)(3), "carrying a concealed firearm in a vehicle while an *occupant* of the vehicle." (*Padilla*, at p. 131, italics added.) Padilla argued he wasn't guilty because someone else had brought the gun into the car. The court noted subdivision (a)(3) was a different offense from the offense described in subdivision

b. *The evidence was insufficient to establish McPheeters's car was under Gebauer's control or direction for purposes of section 25400, subdivision (a)(1)*

The Attorney General asserts McPheeters "drove [Gebauer] to the location where the crime occurred" and "remained in the stationary car" as Gebauer got out, yelled at Alyssa, and "pointed a weapon at the victim."  The Attorney General then says, "Ms. Martinez [*sic*] returned to the car, still parked with McPheeters behind the wheel, after she was ordered to do so by appellant."  (Presumably, the Attorney General means to refer to Alyssa McPheeters, although the reference to "she" is ambiguous.)  McPheeters then, the Attorney General continues, drove Gebauer and Alyssa away.

The sole case the Attorney General cites (without discussion) for its contention that Gebauer had control or direction over McPheeters's vehicle is *People v. Gant* (1968) 264 Cal.App.2d 420 (*Gant*).  In that case, Gant and his codefendant Reed were convicted of burglary and "carrying a concealed weapon" (*id*. at p. 421) in violation of former section 12025.  (The opinion didn't specify which subsection of section 12025 applied.)  Gant also was convicted of grand theft.  Police stopped Gant and Reed in a stolen car, bearing stolen plates.  Gant was driving and Reed was in the front passenger seat.  Two other men were in the back.  Police found two stolen firearms (a Mauser pistol and a Colt .45) in the car, one under the dash to the right

_____

(a)(1), carrying "a gun 'concealed within any vehicle which is under his or her control.' "  (*Id*. at p. 133.)  The court concluded subdivision (a)(3) "does not require the accused to have brought the gun into the car."  (*Ibid*.)

17

of the glove box and one under the floormat of the front passenger seat.  The victim had reported the guns missing after the burglary.  (*Gant*, at pp. 421–423.)

On appeal, Gant and Reed argued they didn't know the guns were in the car.  Rejecting this argument, the court stated the "close proximity and availability" to Reed of the Mauser pistol "indicate[d] knowledge on his part that the Mauser was there." (*Gant, supra,* 264 Cal.App.2d at p. 424.)  As to Gant, the court continued, "[T]he entire vehicle was under his control inasmuch as he was the driver."  (*Id.* at p. 425.)  Therefore, "[i]t was reasonable for the trial judge to infer . . . the vehicle was in the joint possession of Gant and Reed with Gant having actual control and direction."  (*Ibid.*)

*Gant* supports Gebauer's position, not the Attorney General's.  Both in the trial court and here on appeal, the prosecution seems to equate "possession" with "control or direction."  At least on the facts here, they are not the same thing.  Even if Gebauer and McPheeters could be said to have joint "possession" of McPheeters's car—a dubious proposition as they were not in a stolen car with a burglary victim's property as were Gant and Reed—McPheeters as the owner of the car and its driver was the person with control or direction of the car. That Gebauer went along with his girlfriend, in *her* car with *her* driving, to collect her daughter does not constitute his "control or direction" of the car.  Neither Gebauer nor anyone else ever testified Gebauer instructed or directed McPheeters to remain in the car, to keep it running, to wait for him to return, or to drive away once Alyssa had come to the car.

In short, neither the cases the trial court relied on nor the sole authority the Attorney General has cited on appeal stands

18

for the proposition that a passenger who's merely accompanying another person on an errand has "control or direction" of that other person's car. Nor have we found any case that so holds.

## DISPOSITION

We reverse Craig David Gebauer's conviction on count 3 for having a concealed firearm, not registered to him, in a vehicle that was under his control or direction, in violation of section 25400, subdivision (a)(1). We dismiss that count. We otherwise affirm the conviction. The trial court is to prepare an amended abstract of judgment and forward it to the Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P. J.

ADAMS, J.